Slip Op. 09-38

UNITED STATES COURT OF INTERNATIONAL TRADE

```
┌─────────────────────────────────────────┐
│                                          │
│ CORMORANT SHIPHOLDING CORPORATION,       │
│                                          │
│              Plaintiff,                  │
│                                          │
│                   v.                     │
│                                          │
│ UNITED STATES,                           │
│                                          │
│              Defendant.                  │
│                                          │
└─────────────────────────────────────────┘
```

Before: Pogue, Judge

Court No. 08-00235

**OPINION**

[Plaintiff's motion to dismiss Defendant's Counterclaims, for lack of jurisdiction, denied.]

Dated: May 12, 2009

Williams Mullen, PC (Evelyn M. Suarez, Dean A. Barclay, and George H. Bowles) for the Plaintiff.

Michael F. Hertz, Acting Assistant Attorney General; Barbara S. Williams, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Edward F. Kenny) for the Defendant.

**Pogue, Judge:** In this action, Cormorant Shipholding Corporation ("CSC") challenges ship repair duties assessed on CSC's U.S.-flagged vessel, M/V American Cormorant (the "Cormorant") by Defendant U.S. Customs and Border Protection ("Customs" or "the government"). Customs assessed duties on the Cormorant's repairs in accordance

with section 466 of the Tariff Act of 1930 (the "Vessel Repair Statute"), as amended, 19 U.S.C. § 1466.[1]   The court has jurisdiction over Plaintiff's protest action pursuant to 28 U.S.C. § 1581(a).[2]

In response to CSC's complaint, Customs asserts two counterclaims. CSC now moves, pursuant to USCIT R. 12(b)(1), to dismiss Customs' counterclaims, asserting that the court lacks subject matter jurisdiction to hear those claims. The court denies Plaintiff's motion because Customs' counterclaims involve the same imported merchandise that is the subject of Plaintiff's protest action, giving the court jurisdiction to entertain the counterclaims under 28 U.S.C. § 1583.[3]

## BACKGROUND

First enacted by Congress in 1866, the Vessel Repair Statute

---

[1] Unless otherwise stated, further citations to the Tariff Act of 1930 are to the relevant provisions of Title 19 of the U.S. Code, 2000 edition.

[2] 28 U.S.C. § 1581(a) provides: "The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930."

[3] 28 U.S.C. § 1583 provides:

In any civil action in the Court of International Trade, the court shall have exclusive jurisdiction to render judgment upon any counterclaim, cross-claim, or third-party action of any party, if (1) such claim or action involves the imported merchandise that is the subject matter of such civil action, or (2) such claim or action is to recover upon a bond or customs duties relating to such merchandise.

imposes a 50% tariff on the value of repairs performed abroad.[4] <u>See Texaco Marine Servs., Inc. v. United States</u>, 44 F.3d 1539, 1540 (Fed. Cir. 1994).

Certain exclusions apply to these ad valorem duties. Relevant to this litigation, a vessel that "arrives in a port of the United States two years or more after its last departure from a port in the United States" is subject to the duties only on those repairs made "during the first six months after the last departure of such vessel from a port of the United States." 19 U.S.C. § 1466(e)(1)(B). This exclusion, however, generally will not apply "if the vessel departed from the United States for the sole purpose of obtaining" the repairs. <u>Id.</u> § 1466(e)(2).

The Cormorant left a U.S. port on March 21, 1992. The ship returned to a U.S. port, in September, 2001, after a continuous nine-and-one-half-year voyage outside the United States. Upon the Cormorant's return, CSC timely filed a vessel repair entry and an

---

[4] The statutory text states:

The equipments, or any part thereof, including boats, purchased for, or the repair parts or materials to be used, or the expenses of repairs made in a foreign country upon a vessel documented under the laws of the United States to engage in the foreign or coasting trade, or a vessel intended to be employed in such trade, shall, on the first arrival of such vessel in any port of the United States, be liable to entry and the payment of an ad valorem duty of 50 per centum on the cost thereof in such foreign country. . . .

19 U.S.C. § 1466(a).

application for relief.  In 2006, Customs made a duty assessment on

the Cormorant's foreign repairs in the amount of $5,231,610.88.  CSC

timely protested the assessed duties in accordance with the

statutory and regulatory protest provisions. See 19 U.S.C. § 1514;

19 C.F.R. § 174.12.  In particular, CSC challenged Customs'

assessment of duties on invoices[5] reflecting certain repairs

performed in Southampton, United Kingdom;[6] Gothenberg, Sweden;[7] and

the Blohm & Voss Shipyard in Hamburg, Germany.[8]

Customs denied the protest.  See HQ H008155 (Apr. 16, 2008),

available at 2008 WL 5568232.[9] First, Customs noted that "[b]ecause

the vessel was overseas for more than two years, work undertaken

after the first six months from the [Cormorant's] departure from the

U.S. is exempted from vessel repair duties." Id. 2.  As a result,

---

[5] Invoices submitted to Customs to account for the foreign
vessel repairs are referenced as "Items."  In its protest, CSC
challenged Customs' determination that Items 5, 7-8, 10-16, 24-
25, 29-30, 33, 35-36, 38 and 41 were dutiable.

[6] Reported repair expenses in Southampton include, inter
alia, Items 5, 7 and 8.

[7] Reported repair expenses in Gothenberg include, inter
alia, Items 10-16, 24-25 and 29-30.

[8] Reported repair expenses in Hamburg include, inter alia,
Items 33, 35-36, 38 and 41.

[9] CSC claims that Customs in fact denied the protest in part
and affirmed in part.  The court notes that Customs ruled, in HQ
H008155, that it "determined that the protest should be denied."
Id. 7.  Further, every item protested by CSC in HQ H008155 was
found by Customs to be dutiable. Id. 3-7; see also supra notes 5-
7.

Customs reasoned, "only repairs or expenses of repairs that took place within the first six months from the date the vessel left the last U.S. port on March 21, 1992 [i.e., before September 21, 1992] are dutiable." Id.  Second, in accordance with its previously-articulated practice, Customs identified dutiable repairs in the Cormorant's entry.[10]  Of specific relevance to the motion to dismiss at issue here, Customs denied CSC's protest as to Item 41, generally, because CSC had failed to provide sufficient information or documentation to qualify these expenditures as exempt from the duty assessment.[11] Id. 3-6.

---

[10] In doing so, Customs applied the Texaco "but for" test for identifying dutiable repairs.  In Texaco, the Federal Circuit held: "we interpret 'expenses of repairs' as covering all expenses (not specifically excepted in the statute) which, but for dutiable repair work, would not have been incurred." Texaco Marine Servs., 44 F.3d at 1544.  Expanding upon Texaco, the Federal Circuit also has sanctioned Customs' apportionment of expenses attributable to dutiable and nondutiable repairs so as to assess ad valorem taxes "on only that portion of the expense that is fairly attributable to the dutiable repairs." SL Serv., Inc. v. United States, 357 F.3d 1358, 1362 (Fed. Cir. 2004).
     The Cormorant arrived at a U.S. port after the Federal Circuit's issuance of the Texaco decision in 1994.

[11] Specifically, Customs denied CSC's protest as to Item 41, which, according to Customs, reflected $10,000,000 (i.e., the total invoice minus a credit note) in repairs taking place between September 1 and November 16, 1992 (66 days). See HQ 800815, 5.  As the six-month dutiable period ended September 21, it was incumbent upon CSC to demonstrate which repairs were performed outside the statutory period. Id.  The only "independent" documents that CSC provided Customs were the overall invoice and the first three weekly status reports, which demonstrated that, as of September 25, 32% of the contracted work had been completed. Id.  As Customs had no other information, Customs determined that "we must conclude that 32% of the work that is the basis of the $10,000,000.00 invoice was completed

In response to Customs' protest decision, CSC, in its complaint
here, claims that Customs erred in assessing ad valorem duties on
all previously-challenged invoices except Item 38.  Answering CSC's
complaint, the government asserts two discrete counterclaims,
claiming jurisdiction for each pursuant to 28 U.S.C. § 1583.  First,
the government claims that CSC's "Application for Relief and
Protest, specifically with regard to [Item 41] . . . was not
supported by the required evidentiary elements" specified by 19
C.F.R. § 4.14.[12] Def.'s Ans. to Amended Compl. & Countercl. ¶ 37.

————————————————

within the dutiable 6-month period, thus $3,200,000.00 of the
invoice costs were performed or incurred during the 6-month
dutiable period." Id.

[12] The government cites the current version of this
regulation, which requires each application for relief to contain
the following documentation:

> (i) Itemized bills, receipts, and invoices for
> ["foreign voyage expenditures for equipment, parts of
> equipment, repair parts, materials and labor"]. The
> cost of items for which a request for relief is made
> must be segregated from the cost of the other items
> listed in the vessel repair entry;

> (ii) Photocopies of relevant parts of vessel logs, as
> well as of any classification society reports which
> detail damage and remedies;

> (iii) A certification by the senior officer with
> personal knowledge of all relevant circumstances
> relating to casualty damage (time, place, cause, and
> nature of damage);

> (iv) A certification by the senior officer with
> personal knowledge of all relevant circumstances
> relating to foreign repair expenditures (time, place,
> and nature of purchases and work performed);

Because CSC did not provide this required documentation, the government now claims that "the entire $12,745,125.00 Shipyard invoice [presumably, the $10 million amount with the credit note added back in] must therefore be considered fully dutiable." Id. ¶¶ 38-40.  Second, Customs alleges that CSC "failed to establish that the relevant departure of [the Cormorant] was not for the sole purpose of obtaining equipment, parts, materials or repairs" as required for the section 1466(e) exemption to apply at all, and thus "the entirety of [CSC's] claim for relief from duties [is] invalid."[13] Id. ¶ 41.

### Standard of Review

Like all federal courts, the Court of International Trade is a court of limited jurisdiction. Norsk Hydro Can., Inc. v. United States, 472 F.3d 1347, 1355 (Fed. Cir. 2006).  Therefore, the government, as the party attempting to invoke the court's

---

(v) A certification by the master that casualty-related expenditures were necessary to ensure the safety and seaworthiness of the vessel in reaching its United States port of destination; and

(vi) Any permits or other documents filed with or issued by any United States Government agency other than CBP regarding the operation of the vessel that are relevant to the request for relief.

19 C.F.R. § 4.14(i)(1)(i)-(vi).  The government avers that CSC's application lacked (i)-(iii).

[13] The court notes that the government's counterclaims are not consistent with Customs determination of CSC's protest.

jurisdiction, bears the burden to establish that its counterclaim lies within that jurisdiction. See id. (citing Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994)). Contrary to CSC's arguments, however, the government has adequately met its burden and its counterclaims are properly brought under 28 U.S.C. § 1583.

## DISCUSSION

CSC's motion to dismiss raises two issues: (1) whether vessel repairs may be viewed as "imported merchandise" for the purposes of establishing jurisdiction pursuant to section 1583, and, if so, (2) whether the repairs identified in the government's counterclaim may be viewed as involving the same "subject matter" as CSC's action.[14]

The court addresses each issue in turn.

## I. The Vessel Repairs Constitute "Imported Merchandise"

### A. Common Meaning of Section 1583's Text

The court's interpretation of section 1583 begins with the

---

[14] CSC also argues that the court should dismiss the government's counterclaim as it fails to explicitly state any grounds for subject matter jurisdiction. In this regard, CSC is correct. According to USCIT R. 8(a):

> [a] pleading that states a claim for relief must contain . . . a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support. . . .

The original ground for jurisdiction asserted in CSC's complaint, i.e., 28 U.S.C. § 1581(a), is limited to actions to contest the denial of a protest and neither extends to counterclaims nor to actions commenced by the government. However, as the government has amended its counterclaims to assert jurisdiction pursuant to 28 U.S.C. § 1583, CSC's first argument has become moot.

words of the statute. <u>Exxon Mobil Corp. v. Allapattah Servs., Inc.</u>, 545 U.S. 546, 568 (2005) ("[T]he authoritative statement is the statutory text, not the legislative history or any other extrinsic material."); <u>Timex V.I., Inc. v. United States</u>, 157 F.3d 879, 882 (Fed. Cir. 1998) ("To ascertain . . . Congress['s] . . . intention . . ., [the Court] employ[s] the 'traditional tools of statutory construction.'" (citing <u>Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 843 n. 9 (1984))); <u>id.</u> ("The first and foremost 'tool' to be used is the statute's text, giving it its plain meaning . . . .") (citing <u>VE Holding Corp. v. Johnson Gas Appliance Co.</u>, 917 F.2d 1574, 1579 (Fed. Cir. 1990))).

By its terms, however, neither section 1583 nor any other of the court's jurisdictional statutes define "merchandise." Accordingly, when a term is not defined in a statute, the court looks to the term's common meaning. <u>See</u> <u>Witex, U.S.A., Inc. v. United States</u>, 577 F. Supp. 2d 1353, 1356 (CIT 2008) (citing <u>Bentkamp v. United States</u>, 40 CCPA 70, 78, C.A.D. 500 (1952)). In discerning this common meaning, federal courts, including the Federal Circuit and this Court, rely on dictionary definitions of the statute's words. <u>See</u> <u>Archer Daniels v. United States</u>, No. 2008-1342, 2009 WL 777459, at *2 (Fed. Cir. Mar. 26, 2009) ("When, as here, 'a tariff term is not defined in [the statute] or its legislative history, the term's correct meaning is its common or dictionary meaning in the absence of evidence to the contrary.'"

(quoting <u>Airflow Tech., Inc. v. United States</u>, 524 F.3d 1287, 1291 (Fed. Cir. 2008))); <u>Pesquera Mares Australes Ltda. v. United States</u>, 266 F.3d 1372, 1382 (Fed. Cir. 2001) (in determining the common or "established" meaning of a term, "it is appropriate to consult dictionaries."); <u>Outer Circle Prods. v. United States</u>, No. 05-00678, 2009 Ct. Intl. Trade LEXIS 3, at *27 (CIT Jan. 9, 2009); <u>Witex</u>, 577 F. Supp. 2d at 1356.

Common definitions of "merchandise" include vessel repairs. <u>See, e.g.,</u> <u>American Heritage Dictionary of the English Language</u> 1099, 1939 (4th ed., Houghton Mifflin Co. 2000) ("merchandise" are "goods bought and sold in business; commercial wares"; further, a "ware" is "an article of commerce" or "an immaterial asset or benefit, such as a service or personal accomplishment, regarded as an article of commerce"); 1 <u>Shorter Oxford English Dictionary</u> 1754, 464 (6th ed., Oxford University Press 2007) ("merchandise" are "[t]he commodities of commerce; goods to be bought and sold"); <u>Webster's Third New International Dictionary of the English Language</u> 1413 (Merriam-Webster, Inc. 2002) ("merchandise" means "the commodities or goods that are bought or sold in business: the wares of commerce"); 3 <u>Oxford English Dictionary</u> 563-64 (2d ed., Clarendon Press 1989) (in turn, a "commodity," especially in commerce, constitutes "[a] kind of thing produced for use or sale, an article of commerce, an object of trade"); 1 <u>Shorter Oxford English Dictionary</u>, <u>supra</u>, 464 (a "commodity" is "[a] thing of use or value

. . . a thing that is an object of trade"). Vessel repairs, as goods and services with commercial benefits, are plainly "commercial wares" and constitute things "produced for use or sale" in that they restore vessel parts to their previous state of operation.

In addition, the vessel repairs at issue here were clearly "imported." 1 Shorter Oxford English Dictionary, supra, at 1339 ("import" is defined as "[t]o bring in; to introduce from an external source; . . . bring in (goods, etc.) from another country").[15] Thus, section 1583(1) includes vessel repairs when those repairs are brought into the country from a foreign or external source.[16]

_____

[15] CSC points to United States v. Shabahang Persian Carpets, Ltd., 21 CIT 360, 361, 963 F. Supp. 1207, 1209-10 (1997) to support its statement that a counterclaim not involving "imported merchandise" is not within section 1583 jurisdiction. However, Shabahang is inapposite. In Shabahang, the court did not inquire into the definition of "merchandise" under section 1583 because the items under scrutiny were not "imported" in the first place. Id.

[16] CSC cites 19 U.S.C. § 1401(c) which defines "merchandise" for purposes of the Tariff Act of 1930 as "goods, wares, and chattels of every description, and includes merchandise the importation of which is prohibited, and monetary instruments as defined in section 5312 of title 31." 19 U.S.C. § 1401(c). As demonstrated above, however, dictionary definitions of "wares" include CSC's vessel repairs. CSC further argues that 19 U.S.C. § 1401(c) purposely distinguishes "monetary instruments" to denote their inclusion because the ordinary meaning of "merchandise" fails to do so. However, unlike vessel repairs, money or currency is not considered "merchandise," but rather the means by which that merchandise is acquired. See generally 31 U.S.C. §§ 5312(a)(3)(c), 5316, 5331. Thus, CSC's use of section 1401(c) to show  a limited statutory circumscription of "merchandise" is unpersuasive.

## B. Section 1583's Interpretation

The court's plain language reading of "imported merchandise" to include CSC's vessel repairs also comports with prior interpretation of section 1583.  First, the court interprets section 1583 broadly. See, e.g., United States v. Mecca Export Co., 10 CIT 644, 645-47, 647 F. Supp. 924, 925-27 (1986); M&M/Mars Snackmaster, Div. of Mars, Inc. v United States, 5 CIT 43, 44 (1983).  The prudential reasons for broadly exercising federal district courts' ancillary jurisdiction are similar to those the court should use in applying its own jurisdiction under § 1583:

> The same considerations enunciated by numerous Federal
> Courts supporting liberal exercise of ancillary
> jurisdiction in Federal District Courts apply with even
> greater force in this case. . . . Just as with ancillary
> jurisdiction questions, this Court as a matter of sound
> judicial administration and to insure consistent results
> should, in considering § 1583, endeavor to avoid
> multiplicity of actions.  If the Court were to accept
> plaintiff's arguments, the result would discourage the
> proper settlement of cases by sureties with the
> government.

Mecca Export Corp., 10 CIT at 647.

Moreover, this broad interpretation reflects Congress's intent that related actions be consolidated.  In adopting section 1583, Congress recognized the need to allow all claims arising out of an underlying import transaction to be adjudicated fully and completely in one action before this Court. See H.R. Rep. No. 96-1235, at 37-38 (1980), reprinted in 1980 U.S.C.C.A.N. 3729, 3748-49; see also Tikal Distrib. Corp. v. United States, 24 CIT 149, 156 n.4, 93 F. Supp.

2d 1269, 1275 n.4 (2000).[17]  Thus, to exclude vessel repairs from
the statutory term "imported merchandise," as CSC requests, would
frustrate congressional intent in adopting the statute. See Texaco
Marine Servs., Inc. v. United States, 44 F.3d 1539, 1544 (Fed. Cir.
1994) ("To interpret the statute any more restrictively would thwart
the broad, general language which we presume was deliberately used
by Congress.").

### C. Sections 1581 and 1582

The statutory structure of the Court's other jurisdictional
statutes also supports the use of the common meaning of "imported
merchandise" to include vessel repairs. See Fin. Planning Ass'n v.
SEC, 482 F.3d 481, 487 (D.C. Cir. 2007) ("Applying the 'traditional
tools of statutory construction,' the court looks to the text,
structure, and the overall statutory scheme, as well as the problem
Congress sought to solve." (quoting Chevron, 467 U.S. at 843 n. 9)
(internal citation omitted)).

Arguing against the court's plain language reading, CSC evokes
the doctrine of expressio unius est exclusio alterius, see Int'l
Trading Co. v. United States, 28 CIT 1, 7, 306 F. Supp. 2d 1265,

---

[17] Prior to the adoption of section 1583, if the court found
Customs' appraisement to be incorrect, the court could not uphold
a different appraised value claimed by the Government.  Rather,
the court could only dismiss the action, without requiring the
plaintiff to pay any additional duties.  Section 1583 remedied
this problem and permits the government to "assert[] a claim that
would allow the court to make the proper determination and
accordingly would enable the Government to collect the full
amount of duties." H.R. Rep. No. 96-1235, at 36.

1270 (2004), to claim that the explicit listing, in 28 U.S.C. § 1581(h), of "vessel repairs," necessarily precludes a broader reading of that phrase in other sections of this Court's jurisdictional statutes.  But the language of Section 1581(h) of title 28 of the United States Code provides otherwise. Specifically, Section 1581(h) gives the court

> exclusive jurisdiction of any civil action commenced to review, prior to the importation of the goods involved, a ruling issued by the Secretary of the Treasury, or a refusal to issue or change such a ruling, relating to classification, valuation, rate of duty, marking, restricted merchandise, entry requirements, drawbacks, vessel repairs, or similar matters . . . .

Id.  The enumeration of "vessel repairs" refers back to the phrase "importation of the goods involved."  As such, subsection (h) supports rather than controverts the conclusion that these repairs are considered imported merchandise for purposes of jurisdiction. In addition, merely because "vessel repairs" are listed in subsection (h), does not preclude the inclusion of "vessel repairs" elsewhere in the jurisdictional statutes, even when not specifically enumerated there.  For example, plaintiffs filed this action originally pursuant to section 1581(a), although this subsection says nothing specific about "vessel repairs."[18]

---

[18] See also Bar Bea Truck Leasing Co. v. United States, 4 CIT 104, 106-08 (1982) (the doctrine of expressio unius est exclusio alterius does not preclude the court's jurisdiction to review the revocation of cartage licenses pursuant to the residual grant of jurisdiction in section 1581(i)); Di Jub Leasing Corp. v. United States, 1 CIT 42, 47, 505 F. Supp. 1113, 1117 (1980) ("the legislative history of the residual

Moreover, 28 U.S.C. § 1582 uses similarly broad language, referring to jurisdiction "of any civil action which arises out of an import transaction and which is commenced by the United States-. . . (3) to recover custom duties." Yet, CSC could not successfully argue that <u>expressio unius est exclusio alterius</u> would prevent the United States from filing an action to recover duties under § 1582.

### D. 19 U.S.C. § 1498

Further, vessel repairs have been found to constitute "merchandise" in related statutory contexts. For example, 19 U.S.C. § 1498, a sister statute to section 1466, defines "merchandise" as including "vessel repairs." Through 19 U.S.C. § 1498(a)(10), Congress granted the Secretary of the Treasury broad authority to promulgate rules and regulations with respect to "merchandise," including specifically 19 U.S.C. § 1466, stating, in relevant part, that:

> The Secretary of the Treasury is authorized to prescribe rules and regulations for the declaration and entry of -
> . . .
>
>> (10) Merchandise within the provisions of sections 1465 and 1466 of this title (relating to supplies, repairs, and equipment on vessels and railway cars) at the first port of arrival . . . .

---

jurisdictional provisions in section 1581(i) obviously evinces congressional intent that these special provisions shall be accorded a broad construction" (citing H.R. Rep. No. 96-1235, at 33-34.)).

Id. Interpreting this provision, the Federal Circuit has concluded that section 1466 "vessel repairs" come within the scope of "imported merchandise." Specifically, based on the language of § 1498(a)(10), the Federal Circuit held that 19 U.S.C. § 1315(d)(1988)[19] applies to the Vessel Repair Statute. See Texaco Marine Servs., Inc. v. United States, 44 F.3d 1539, 1547-48 (Fed. Cir. 1994). The Federal Circuit Court noted that 19 U.S.C. § 1498(a)(10) (1988) "indicates an intention by the Congress that expenses within the vessel repair statute shall be regarded as merchandise imported into the United States." Id. at 1547 (citing Int'l Navigation Co. v. United States, 38 Cust. Ct. 5, 9, C.D. 1836, 148 F. Supp. 448, 453 (1957); Pac. Transp. Lines, Inc. v. United States, 29 Cust. Ct. 21, 27, C.D. 1439 (1952)); accord Sea-Land Serv., Inc. v. United States, 69 F. Supp. 2d 1371, 1378 n.6 (CIT 1999).

CSC asserts that Congress deliberately used the two terms "merchandise" and "repairs . . . on vessels" in § 1498(a)(10) to clarify its reference to both, as the former does not typically

---

[19] Currently, section 1315(d) provides in relevant part:

No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the Federal Register of notice of such ruling....

comprise the latter. But Congress used "merchandise" interchangeably with "supplies, repairs, and equipment on vessels and railway cars," as is denoted by the parentheses, further specifying the type of merchandise to which Congress referred, and thus intended for "merchandise" to comprise "repairs" within section 1466.[20] Consequently, CSC's position conflicts with clearly-stated Federal Circuit case law. See <u>Texaco Marine Servs.</u>, 44 F.3d at 1547-48. While Congress did not define "imported merchandise" for the specific purpose of section 1583, there is no indication that it intended for vessel repair expenses to be merchandise under § 1498(a)(10) but not under section 1583.

## E. CSC's Remaining Arguments

Finally, CSC unpersuasively cites to various parts of Title 19 in isolation, as well as to certain regulations to allege that Congress intended to distinguish vessel repairs from merchandise. None of these statutory or regulatory provisions, however, when read in context, supports CSC's position. The court addresses each in turn.

CSC first alleges that the fact that the word "merchandise"

---

[20] CSC additionally asserts that the government's reliance on 19 U.S.C. § 1498(a)(10) as expressly using "merchandise" to refer to vessel repair expenses, is moot, as it relates only to the Secretary's authority to promulgate "rules and regulations" for "declaration and entry," rather than for jurisdiction under 28 U.S.C. § 1583. Reply to Government's Opp. to Mot. to Dismiss Countercl. 8. Reading the provision in context, however, the court cannot agree with this limited interpretation.

does not appear anywhere in 19 U.S.C. § 1466 dictates that Congress did not intend to treat vessel repairs as such. However, section 1466 simply separates "merchandise" into more specific terms; for instance, section 1466 regularly refers to "equipments," "parts," "materials" and/or "repairs" collectively, thus indicating its intent to treat them similarly. <u>See</u> 19 U.S.C. § 1466(a); (d)(2)-(3); (e)(1)(B),(2); (f); (g); (h). Just as equipment, parts, and materials are all considered "merchandise," the more general term "repairs" must also be included within this reading.

Second, CSC asserts that General Note 1 to the Harmonized Tariff Schedule of the United States ("HTSUS") handling "Tariff Treatment of Imported Goods and of Vessel Equipments, Parts and Repairs," demonstrates congressional intent to distinguish vessel repairs from other goods, because "imported goods" and "vessel . . . repairs" are separated by a conjunction, instead of being presented as one and the same. The narrow view, that "and" is used in a conjunctive sense in every statutory provision and that its existence is conclusive in determining which terms Congress intended to group together, conflicts with established jurisprudence. <u>See, e.g.</u>, <u>Doughten Seed Co. v. United States</u>, 24 CCPA 258, 260 (1936) (It is a "well-settled principle that courts may construe the words 'and' and 'or' to have a meaning different from that arrived at by a strict grammatical construction, if by so doing the different provisions of the paragraph or act under consideration can be

harmonized, and anomalous results avoided."); see also Noss Co. v. United States, 7 CIT 111, 116, 588 F. Supp. 1408, 1413 (1984). Moreover, the word choice in this specialized statute reflects the need for precision in describing which goods are subject to a duty. As already noted, this in no way contradicts the broad reading of the court's jurisdictional statutes. See Di Jub Leasing Corp., 1 CIT at 47.

CSC finally claims that Customs itself has stated that it "believes that vessel repair entries do not involve entries of imported merchandise as provided in 19 U.S.C. § 1500(d)"[21] and argues that Customs cannot now claim that the two are the same in

---

[21] 28 U.S.C. § 1500 provides:

The Customs Service shall, under rules and regulations prescribed by the Secretary--

(a) fix the final appraisement of merchandise by ascertaining or estimating the value thereof, under section 1401a of this title, by all reasonable ways and means in his power, any statement of cost or costs of production in any invoice, affidavit, declaration, other document to the contrary notwithstanding;

(b) fix the final classification and rate of duty applicable to such merchandise;

(c) fix the final amount of duty to be paid on such merchandise and determine any increased or additional duties, taxes, and fees due or any excess of duties, taxes, and fees deposited;

(d) liquidate the entry and reconciliation, if any, of such merchandise; and

(e) give or transmit, pursuant to an electronic data interchange system, notice of such liquidation to the importer, his consignee, or agent in such form and manner as the Secretary shall by regulation prescribe.

order to assert section 1583 jurisdiction. <u>Foreign Repairs to American Vessels</u>, 66 Fed. Reg. 16,392, 16,396 (Dep't Treas. Mar. 26, 2001) (final rule).  However, through this regulatory language, Customs simply emphasized the distinction between, and the need to keep separate, the <u>liquidation</u> procedures for goods imported into the United States and the <u>duty assessment process</u> under the Vessel Repair Statute; section 1466 "is self-contained and sets a parallel procedure for making a final determination of the duty due on such repairs." <u>Id.</u>  Moreover, Customs added, "[a]lthough vessel repair entries will not be liquidated, any duties assessed on such entries will still be subject to protest under 19 U.S.C. § 1514(a)(2)." <u>Id.</u> The court finds no indication that Customs implied that vessel repair duty assessment restricts the scope of the protest process; as such, Customs regulatory language concerning duty assessment certainly does not restrict the court's jurisdiction.[22]

--------

[22] In one sense, certainly, "vessels [themselves] have been treated as sui generis, and subject to an entirely different set of laws and regulations from those applied to imported articles." <u>The Conqueror</u>, 166 U.S. 110, 118 (1897) (holding that a 272-ton pleasure yacht sailed into New York is not, itself, a dutiable article).  At the same time, however, as the Court noted, there is a difference between tonnage duties on vessels themselves and the duty rates for "dutiable articles." <u>Id.</u> (explaining that "boats . . . imported or brought upon the decks of other vessels, [which] are mere manufactures of other 'articles,' are within the description of the tariff acts.")  As explained above, the Vessel Repair Statute places repairs in the latter category.

**II. The Government's Counterclaim Involves the "Subject" Merchandise**

The government's counterclaim also involves the "subject" merchandise of CSC's action. CSC argues to the contrary, citing Export Packers Co. v. United States, 16 CIT 394, 398, 795 F. Supp. 422, 426 (1992) (holding that the Court of International Trade did not have jurisdiction over a government counterclaim).

But Export Packers is inapposite. In Export Packers, Plaintiff, an importer of frozen egg yolks, challenged Customs' classification, under HTSUS 119.65 and 119.70, of 67.5% of its products - resulting in duty rates of 27 and 5.5 cents per pound, respectively; the remaining 32.5% of its products had been classified under HTSUS 800, and thus had entered duty-free. Id. at 394-95. The government counterclaimed to reclassify the 32.5% remaining imports and obtain duty thereon. Id. The court dismissed the counterclaim, as it involved the liquidation of merchandise that were "separate and distinct" from those put at issue by plaintiff's complaint, "evidenced by the distinguishable classification treatment assessed by Customs when the entries were liquidated." Id. at 398; see also id. ("the genesis of Export Packers' complaint concerns 67.5% of the imported frozen salted liquid egg yolks which were derived from shell eggs and assessed with duty under TSUS Items 119.65 and 119.70. Export Packers, maintaining that said merchandise was properly subject to classification in accordance with Item 806.20, protested Customs' liquidation and commenced this civil

action for purposes of obtaining judicial review of Customs' denial respecting said protests. . . . Plainly, the remainder of the subject entries, representing 32.5% of the frozen salted liquid egg yolks derived from liquid egg yolk, were liquidated in compliance with Item 800.00. But <u>Export Packers has not contested that liquidation</u>." (emphasis in original)).

In contrast, the vessel repairs originally contested by CSC here cannot be said to constitute "separate and distinct" entries or duty assessments that are different from those potentially added in the government's counterclaims.  The vessel repairs referenced in CSC's complaint and the government's counterclaims all involve the same vessel repair entry, the same Customs duty assessment, and indeed even the <u>very same invoices</u> referenced in CSC's complaint.[23]

Furthermore, nothing from the record demonstrates that the Item

---

[23] <u>Compare</u> <u>Am. Permac, Inc. v. United States</u>, 24 CIT 933, 937, 116 F. Supp. 2d 1317, 1322 (2000) (finding jurisdiction when "there appears to be no dispute among the parties that defendant's counterclaims involve those entries at issue in plaintiff's claim"), <u>amended by</u>, 24 CIT 1158 (2000), <u>with</u> <u>United States v. UPS Customhouse Brokerage, Inc.</u>, 442 F. Supp. 2d 1290, 1303-04 (CIT 2006) (finding the court did not have jurisdiction over the counterclaim because "it lacks jurisdiction over the underlying entries.") <u>and</u> <u>United States v. Lun May Co.</u>, 11 CIT 18, 21, 652 F. Supp. 721, 723-24 (1987) ("The Court holds that Lun May may only raise claims relating to the six entries which are the subject of this civil action," rejecting Lun May's attempt to file a counter claim regarding all entries covered by the bond beyond the government's complaint's six entries).  This does not mean, however, that the fact that the government's counterclaims involve repairs covered by the same entry put at issue by CSC's complaint is necessarily sufficient to demonstrate that the counterclaims involve the same subject matter as the complaint.

41 repairs themselves are different in type or kind so as to be "separate and distinct" from one another, <u>Export Packers</u>, 16 CIT at 398, or involve "different stream[s] of goods." <u>United States v. Shabahang Persian Carpets, Ltd.</u>, 21 CIT 360, 361, 963 F. Supp. 1207, 1210 (1997). Rather, the repairs referenced in Item 41, to which the government's first counterclaim exclusively pertains, spanned several days at the Hamburg port, and the duties assessed on some of those repairs depended solely upon the date on which the repairs were assumed to have taken place. CSC challenges the dates Customs applied to the repairs in Item 41, and the government now counterclaims on the dates applied to the same repairs. In addition, the government's second counterclaim addresses the entirety of CSC's protest claim, citing CSC's alleged failure to document that the Cormorant's trip was not for the sole purpose of obtaining repairs. This second counterclaim asserts only that CSC is not entitled to any relief with regard to the items put at issue by the complaint. Thus, both counterclaims involve the merchandise that is the subject of CSC's action.

## **CONCLUSION**

Therefore, upon consideration of Defendant United States' Counterclaim, and the Motion to Dismiss Counterclaim filed by Plaintiff Cormorant Shipholding Corp., CSC's motion is hereby DENIED.

                                          /s/ Donald C. Pogue
                                        Donald C. Pogue, Judge

Dated: May 12, 2009
       New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____          By: _____

Deputy Clerk